IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Alternative Global Two LLC, Alternative Global Four LLC, and Alternative Global Five LLC, *Delaware limited liability companies*, <br><br>  Plaintiffs, <br><br> v. <br><br> Blackstream Development LLC, *a South Carolina limited liability company*, <br><br>  Defendant. | Case No.: 6:22-cv-4501-JDA <br><br><br><br><br><br> **ORDER AND OPINION** |

This matter is before the Court on Defendant's motion to transfer. [Doc. 49.] This motion is ripe for review.

**BACKGROUND**

On December 13, 2022, Alternative Global Two LLC, Alternative Global Four LLC, and Alternative Global Five LLC, all Delaware limited liability companies (collectively, "Plaintiffs" or "Alternative Global Companies") sued Blackstream Development LLC, a South Carolina limited liability company ("Defendant" or "Blackstream"), primarily alleging as follows:

> The Alternative Global Companies are industry-specific Delaware limited liability companies that invest in certain targeted high growth industries. Between approximately May 2020 and January 26, 2022, the Alternative Global Companies funded at least $17,561,300 to Blackstream in exchange for an equity investment in underlying real estate investments [in South Carolina.] In January 2022, Blackstream shut off the flow of information to the Alternative Global Companies, depriving the Alternative Global Companies of all information on the status of the $17,561,300 in funds or the underlying real estate investments.

> Notwithstanding repeated demands, Blackstream has failed to provide critical information or otherwise account to the Alternative Global Companies.

[Doc. 1 ¶¶ 1, 12.]  Currently, Richard Cardinale ("Cardinale") is the sole management member and member of each of the Alternative Global Companies.  [*Id.* ¶¶ 2–4.][1]  Plaintiffs allege claims against Defendant for breach of fiduciary duty and for accounting of the $17,561,300.  [*Id.* ¶¶ 24–37.]

On January 26, 2023, Defendant filed a motion to dismiss that was denied by the Honorable Timothy M. Cain, United States District Judge, on November 16, 2023.  [Docs. 10; 30.]  On February 13, 2024, this case was reassigned to the undersigned.  [Doc. 46.]

On February 26, 2024, Defendant filed the instant motion to transfer, as well as a motion to quash and for protective order concerning a subpoena Plaintiffs issued to nonparty Southern First Bancshares, Inc. d/b/a Southern First Bank ("Southern First"), the bank Plaintiffs allegedly wired the relevant funds to at Defendant's direction.  [Docs. 48; 49; 1 ¶ 13.]  Relatedly, also pending before the Court is Defendant's motion to compel Southern First's subpoena response.  [Doc. 50.]

Also relevant, the Court notes the ongoing litigation in the Southern District of Florida in *Feingold v. Cardinale*, C/A No. 1:22-20375-RKA (the "Florida Action").  On February 5, 2022, Feingold and Dazzo sued Cardinale, his wife, and their company RVCNY, LLC, in the Southern District of Florida, alleging that they entered into an

---

[1] On or about January 28, 2022, two of the former managers of the Alternative Global Companies, David Feingold ("Feingold") and Michael Dazzo ("Dazzo"), sent notice to Cardinale that they were resigning as managers and withdrawing as members of the Alternative Global Companies, leaving Cardinale as Plaintiffs' sole manager and member. [Doc. 1 ¶ 16.]  Plaintiffs allege Defendant's "flow of information" concerning the relevant investments "abruptly ceased in or around January 2022, which is when [Feingold] and [Dazzo] resigned as Managers of the Global Entities." [Doc. 1-1 at 2.]

2

agreement with Cardinale where, in part, Cardinale would handle the administrative services for Alternative Global Companies, as well as additional companies (collectively, "Alternative Named Entities") and where, beginning in July 2019,

> Over the next two and a half years, Cardinale billed the Alternative Named Entities more than $1.3 million dollars. Feingold and Dazzo paid these amounts believing they were paying for all administrative expenses and Cardinale's continued promise he had maintained all the records, reporting, due diligence, and complete back-office services for the Alternative Named Entities.

[Florida Action, Doc. 102 ¶¶ 12, 27.]

In the Florida Action, Feingold and Dazzo argue that Cardinale fraudulently billed the Alternative Named Entities and failed to disclose millions of dollars in earnings he made from these companies, suing "for failure to pay fair value for membership interests, breach of fiduciary duty, conversion, fraudulent misrepresentations, conspiracy to commit fraud, civil conspiracy, and aiding and abetting breach of fiduciary duty. [*Id.* ¶¶ 1, 31, 34.] Both Feingold and Dazzo are Florida citizens. [*Id.* ¶¶ 2–3.]

In the Florida Action, Blackstream has filed an appearance and moved to quash a subpoena issued to it. In opposition to that motion to quash, Cardinale has represented as follows as to that action:

> The narrowed requests of the Broadstreet Subpoena seek relevant documents pertaining to [Feingold and Dazzo's] claim for the "fair value" of their interests in the six Alternative Global Companies. Cardinale is the sole remaining Manager of Alternative Global Two, LLC ("AG2"), Alternative Global Four, LLC ("AG4"), and Alternative Global Five, LLC ("AG5") (the "AG Companies"), special purpose investment funds that invested at least $17,561,300 in wire transfers to Blackstream Development, LLC's ("Blackstream") bank account ("Project Account"). Those investments, in turn, funded seven (7) real estate projects owned by special purpose vehicles and two restaurant investments in Culver's fast-food restaurants

3

> ("Blackstream SPVs") and in which the AG Companies received ownership interests . . . . [In Count I, Feingold and Dazzo] assert that, upon their resignation, Cardinale failed to pay [Feingold and Dazzo] the "fair value" of their interest in AG6 in accordance with 6 Del. C. § 18-604. Cardinale, Feingold, and Dazzo were the sole members and co-managing members . . . of the AG Companies. Between May 8, 2020 and January 26, 2022, AG2, AG4, and AG5 funded at least $17,561,300 in wire transfers to Blackstream's Project Account. Those investments, in turn, funded the Blackstream SPV's and in which the AG Companies received ownership interest according to Feingold.

[Florida Action, Doc. 157 at 2–5 (footnotes and citation omitted).]

As of an order issued December 18, 2023, in response to a motion filed by Cardinale, the Florida Action is currently stayed and administratively closed pending resolution of certain outstanding motions; the court directed that once the motions are resolved, the case will be reopened and a hearing set for a new scheduling order, and, "[i]n the meantime, all deadlines including the trial period are stayed, but the parties may continue to engage in discovery." [Florida Action, Docs. 185; 186.][2]

## APPLICABLE LAW

A civil action may, except as otherwise provided by law, be brought only in

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;

---

[2] Defendant notes other cases filed by Cardinale and/or Plaintiffs including: (1) the Florida Action; (2) *Alternative Global One, LLC, Alternative Global Two, LLC, Alternative Global Three, LLC, Alternative Global Four, LLC, Alternative Global Five, LLC, Alternative Global Six, LLC v. David Feingold and Michael Dazzo*, C/A No. 2023-000688-CA-01 (11th Judicial Circuit, Miami-Dade County Florida); (3) *Alternative Global Six, LLC v. Durham Homes LLC*, Index No. 653837/2022 (Sup. Ct., NY Cty); (4) *Alternative Global Three, LLC vs. DCG Staten Island LLC, et al.*, C/A No. 2022-022016-CA-01 (11th Judicial Circuit, Miami-Dade County Florida); (5) JAMS Arbitration styled *L3 Capital Management, LLC v. RIG Select Ventures, LLC*; and (6) *RCG Advances, LLC v. David Feingold and Feingold Morgan Sanchez LLC*, C/A No. 9:23-cv-81128-AMC (U.S.D.C. SD Florida). [*See* Doc. 49 at 4 n.2.]

4

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). District courts have wide discretion to transfer an action under 1404(a) "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).  28 U.S.C. Section 1404(a), however, cannot be used by a defendant to defeat advantages accruing to a plaintiff who has chosen a forum which, though inconvenient to defendant, is a proper forum.  *Van Dusen*, 376 U.S. at 633–34.

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

As stated by this Court:

> Notwithstanding the fact there is no such as thing as a specific, one-size-fits-all standard for the Court to employ

5

> when adjudicating § 1404(a) motions, the Court is not bereft of some guidance. For instance, the Court will weigh and balance both Public and Private factors in its determination as to whether it should transfer a case under this statute. Federal Practice and Procedure § 3847. Public factors, which concern the statutory consideration of the interest of justice, include judicial economy, the district's familiarity with the governing law, the local interest in deciding local controversies at home, and whether the docket in one court is more congested than the other. *Id.* "Private factors include the statutory considerations of convenience of the parties and witnesses, but also often include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof." *Id.* The Court notes, however, this list is by no means an exclusive one.

*Del Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 502 (D.S.C. 2016).

## DISCUSSION

As a preliminary matter, Plaintiffs do not dispute that this case could have been brought in the Southern District of Florida. [Doc. 51 at 4 n.1.] Although it is a South Carolina company, Defendant represents that it consents to jurisdiction and venue in the Southern District of Florida and waives any argument to the contrary. [Docs. 49-10 ¶ 7; 49-11 ¶ 7.] Additionally, although Plaintiffs are Delaware companies, their primary corporate and registered offices are in the Southern District of Florida. [Doc. 49-6 at 2, 10, 18.] Third, as noted above, both Dazzo and Feingold are Florida residents. The Court therefore turns to the relevant public and private factors to assess Defendant's motion to transfer.

The parties' primary dispute concerns whether Plaintiffs' choice of venue should be given deference and whether the first-filed rule applies in the instant case. As explained by this Court:

> "Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is

6

> permitted to proceed to the exclusion of another subsequently filed." *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982) (citation omitted); *see also Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) ("[A]s a principal of sound judicial administration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action.") (internal quotation marks and citation omitted). "[C]ourts consider the following three factors in determining whether the first-filed rule applies: '(1) the chronology of the filings[,] (2) the similarity of the parties involved, and (3) the similarity of the issues being raised.'" *PTA-FLA, Inc. v. ZTE Corp.*, C/A No. 3:12-cv-02616-CMC, 2015 WL 13593694, at *13 (D.S.C. July 27, 2015) (unpublished) (quoting *Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051, 2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004) (unpublished)). Pursuant to the first-to-file rule, the "district court has the discretion to dismiss, stay, or transfer a later-filed lawsuit in deference to the first filed action." *Ace Prop. & Cas. Ins. Co. v. Specialty Logging, LLC*, No. 1:14-cv-00944-JMC, 2015 WL 1422181, at *2 (D.S.C. Mar. 27, 2015) (unpublished) (internal citation and quotation omitted).

*Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, No. 7:22-cv-916-HMH, 2022 WL 2276461, at *2 (D.S.C. June 23, 2022).

Plaintiffs argue the first-filed rule is inapplicable here "where the earlier case in question is a closed one." [Doc. 51 at 7; *see id.* at 15.] However, Plaintiffs' case cited in support, *King v. S. Poverty L. Ctr., Inc.*, No. 2:22-CV-207-WKW, 2023 WL 3061825 (M.D. Ala. Apr. 24, 2023), appears inapplicable to the instant case. In *King*, the court explained:

> Plaintiffs make two alternative arguments . . . but those ties easily unravel because they are based on erroneous understandings of the law. First, Plaintiffs ask the court to "transfer this matter to the original civil action" in *King I*, but they cite no authority that would permit a transfer of a later-filed action to an earlier-filed action that is closed. (Doc. # 18 at 17.) This argument, although creative, lacks citation to authority and would amount to a work-around for plaintiffs, who when faced with an adverse final judgment, did not avail themselves of available legal remedies, including the right to

7

>   appeal. *Cf. Blanchard v. Walker*, No. 2:20-CV-696-WKW, 2022 WL 4357449, at *1 (M.D. Ala. Sept. 20, 2022) (finding that the plaintiff's motion to consolidate his time-barred action with his earlier-filed closed action amounted to an impermissible attempt to circumvent the finality of the earlier judgment).

*Id.* at *12. As noted above, the Florida Action has not been closed such that any final judgment has been rendered. Plaintiffs are correct that this case is set to go to trial this year, and because the Florida Action is administratively closed, there currently is no trial date set in that case. [*See* Doc. 51 at 18.] However, the Florida Action is only temporarily closed—at Plaintiffs' request—while the Florida court addresses the parties' substantive arguments, arguments that likely overlap with the arguments the parties will present in the instant case. *See, e.g., Leagans v. LeMaitre Vascular, Inc.*, No. 2:21-CV-01866-DCN, 2021 WL 4753269, at *7 (D.S.C. Oct. 12, 2021) ("Even if the other factors weigh in [a plaintiff's] favor, other courts have determined that in the application of the first-to-file rule, the interest of justice factor (i.e., promotion of judicial economy, avoidance of inconsistent judgments) may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction." (internal quotation marks omitted)).[3]

>   Plaintiffs next argue the two cases are too dissimilar to warrant transfer:
>
>>   The Florida case is limited to an internal dispute between the Alternative Global Companies' current and former members. The Florida case centers around a claim by Feingold and Dazzo, individually, against Cardinale, individually, concerning the value, if any, of their membership interest in the Alternative Global Companies. This case is not an internal

---

[3] Plaintiffs additionally argue that "relative court congestion weighs in favor of this Court," while also noting that "[t]he District of South Carolina and the Southern District of Florida are two of the busiest jurisdictions in the nation." [Doc. 51 at 18.] The Court does not find this factor dispositive.

> company dispute. This case, by contrast, focuses on the conduct of Blackstream and involves Blackstream absconding with over $17 million in funds. The claims in this case are for breach of fiduciary duty and accounting against Blackstream.

[Doc. 51 at 15–16 (footnotes omitted).] Plaintiffs further argue that neither they nor Defendant are parties to the Florida Action and that the measure for the damages in the Florida Action ended well over a year ago when Feingold and Dazzo resigned from Plaintiffs, whereas, here, the measure of damages against Blackstream is continuing, involving "the value of the benefit conferred upon [Blackstream], the amount of funds that [Blackstream] took, the value of those funds and their proceeds, and the value of the projects as currently existing, including the value of the interest that [Blackstream] converted." *Id.* at 16.

The Court is not persuaded. In July 2019, as alleged by Feingold and Dazzo in the Florida Action, Cardinale approached them and, eventually, the three created the following arrangement, as attested to by Cardinale:



[Doc. 49-3 ¶ 5.]

As also attested to by Cardinale, the following arrangement also was formed:



[*Id.* ¶ 11.]

In the Florida Action, Feingold and Dazzo seek recompense from Cardinale regarding his handling of the Alternative Named Entities from July 2019 to early 2022, including Plaintiffs' transfer of at least $17,561,300 to Blackstream. In the instant action, Cardinale, through Plaintiffs, seek recompense from Blackstream concerning the at least $17,561,300 transferred to it from Plaintiffs, occurring between May 2020 and January 2022.

As Defendant argues, this case appears to be subsumed by the Florida Action. [*See* Doc. 49 at 4.][4]  As this Court stated, "[t]o apply the First-Filed rule, the actions being

---

[4] Defendant has submitted portions of a transcript from a hearing before this Court and

assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Daileader*, 2022 WL 2276461, at *3 (internal quotation marks omitted); *see also Fitzgibbons ex rel. Dir. of S.C. Dep't of Ins. v. Atkinson*, No. 8:17-CV-02092-AMQ-JDA, 2018 WL 11433972, at *10 (D.S.C. May 18, 2018) ("Suits are considered parallel if substantially the same parties litigate substantially the same issues in different forums." (internal quotation marks omitted)), *Report and Recommendation adopted by* 2018 WL 3933728 (D.S.C. Aug. 16, 2018).

Next, Plaintiffs argue that even if this Court were to find the cases are similar enough for the first-filed rule to be applicable, "there is a widely recognized exception to it: 'when the balance of convenience favors the second action,' which essentially mirrors the authority of the court to transfer under 1404(a)." [Doc. 51 at 17 (quoting *Daileader*, 2022 WL 2276461, at *3).]

The Court finds the first-filed rule applicable, weighing in favor of the transfer of this case to the Southern District of Florida. Plaintiffs have presented other factors that weigh otherwise. For example, it is certainly relevant that South Carolina substantive law may govern this case and any judgment rendered would be enforced in South Carolina. *See, e.g., Swinton v. Charleston Cnty.*, No. 8:15-CV-04148-PMD-JDA, 2016 WL

---

Judge Cain on motions to quash subpoenas issued to Blackstream in the Florida Action, where Cardinale's attorney in the Florida Action, also Plaintiffs' attorney in this action, stated:

> [T]he essential issue in the situation in the [Florida Action] and the essential problem, the thread running through all of these motions is Feingold and Dazzo directed the money to go to [Blackstream], and to Durham Homes, LLC.

[Doc. 49-8 at 5:20–23.]

11

7477609, at *6 (D.S.C. Nov. 21, 2016) ("Thus, with respect to convenience of the parties, because no party is present in South Carolina, it would be more convenient if the case is transferred to the District of Arizona.  Further, any judgment obtained against the Unit Defendants would be enforced in Arizona."), *Report and Recommendation adopted by* 2016 WL 7451219 (D.S.C. Dec. 28, 2016); *Massachusetts Mut. Life Ins. v. Factory Mut. Ins. Co.*, No. CIV.A. 3:05-CV-69, 2007 WL 3273452, at *4 (N.D.W. Va. Nov. 2, 2007) ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." (internal quotation marks omitted)).  However, these factors are not dispositive and, as discussed below, the balance of convenience does not favor retaining this case in this district.[5]

First, Plaintiffs argue that South Carolina provides the greatest ease of access to the sources of proof, while also acknowledging the location of records and documents are given less weight because of modern technology.  [Doc. 51 at 7–9]; *see*, *e.g.*, *Red Bone Alley Foods, LLC v. Nat'l Food & Beverage, Inc.*, No. 4:13-CV-3590-PMD, 2014 WL 1093052, at *10 (D.S.C. Mar. 14, 2014).  Plaintiffs also note that the subject matter in dispute is related to property physically located in South Carolina.  [Doc. 51 at 8.] Finally, Plaintiffs argue that Blackstream's essential employees and most of the relevant witnesses are in South Carolina.  [*Id.* at 8–9.]

---

[5] Indeed, case law Plaintiffs cite in support of the argument that this Court's familiarity with South Carolina law weighs against transfer does not wholly support their position, where it appears the Southern District of Florida is "most familiar with the parties and their histories."  *Gregory v. FedEx Ground Package Sys., Inc.*, No. 2:10-CV-630, 2012 WL 2396873, at *15 (E.D. Va. May 9, 2012), *Report and Recommendation adopted sub nom. by Gregory v. Fedex Ground Packaging Sys. Inc.*, 2012 WL 2396861 (E.D. Va. June 25, 2012).

12

The Court does not find dispositive the location of records and documents, where Defendant is in South Carolina, but also where Plaintiffs are Delaware limited liability companies with primary corporate and registered offices in the Southern District of Florida and which, during the relevant period, had either one managing member, Cardinale—a New York citizen and resident—or two additional managing members, Feingold and Dazzo— Florida citizens and residents.

The Court also does not find dispositive that the subject matter of this dispute relates to property in South Carolina.  Plaintiffs disagree, repeatedly relying on case law that emphasizes the importance of retaining or transferring venue to where the property in dispute is located.  [*Id.* at 13–14.]  However, this case law is of limited applicability here, where the subject of the dispute is not real property found in South Carolina, per se, but whether Defendant breached its responsibility to Plaintiffs concerning the funds Plaintiffs transferred to Defendant to be invested in roughly 14 South Carolina real estate projects.  [*See id.* at 1–2.]   This case stands in contrast to those cited by Plaintiffs where the property location was significant to the case in a way not found here:

> The rental property's location in South Carolina weighs heavily in favor of retaining venue. Contrary to the assertions of Defendants, the location of the rental property is not "happenstance," and this dispute would not be the same if the rental property involved was "in Maine, Florida, Alaska or Hawaii." Myrtle Beach and North Myrtle Beach are located only a few miles apart. Both are oceanfront towns centered around tourism. The consequences or damages from the Defendants' alleged listing mistake are impossible to determine without reference to the specific properties and locations involved. Plaintiffs assert that they intend to prove damages, at least in part, by offering a witness who is an expert in the South Carolina real estate market. This action is based around an alleged breach of contract. The subject matter of any contract or agreement between the parties was the rental of property located in South Carolina. The State of

13

South Carolina has an interest in the resolution of this dispute. *Kraft Real Est. Invs., LLC v. HomeAway.com, Inc.*, No. 4:08-CV-3788-TLW, 2009 WL 10677930, at *3 (D.S.C. May 14, 2009); *see also Marom v. Pierot*, No. 5:17-CV-608-D, 2018 WL 8576927, at *1 (E.D.N.C. Nov. 7, 2018) (finding venue proper where "Plaintiff asserts defamation claims against Defendants arising out of a town board meeting that took place on April 18, 2017 in the Town of Greenburgh, New York.  The alleged defamatory statements relate to Plaintiff's construction of a house on a lot adjacent to Defendants' residence in the Town of Greenburgh. Plaintiff previously resided in New York where the parties have engaged in voluminous litigation."); *Williams v. Clement*, No. CV 0:18-437-JMC-SVH, 2020 WL 619929, at *6 (D.S.C. Jan. 9, 2020) (transferring to North Carolina where the plaintiff alleged her personal property, located in a home in North Carolina, had been damaged and where the "case concern[ed] real and personal property that is or was located in Buncombe County and is or was subject to multiple North Carolina court orders"), *Report and Recommendation adopted by* 2020 WL 615542 (D.S.C. Feb. 7, 2020).[6]

Regarding Plaintiffs' argument concerning witnesses, Plaintiffs argue that Blackstream's essential employees Ford Elliot ("Elliot"), Josh Howard ("Howard"), Carlos Salgado, and Maxine Turner all reside in South Carolina.  [Doc. 51 at 10.]  Plaintiffs note they have identified 30 witnesses in their Fed. R. Civ. P. 26 disclosures, 19 of whom have

---

[6] For similar reasons, the Court rejects Plaintiffs' unexplained argument that "the jury in this case would likely benefit from viewing a physical location to understand the expenses involved in funding land infrastructure development and end product of such development."  [Doc. 51 at 8, 14.]  It is unclear how a viewing of any development would assist the jury in determining Defendant's fiduciary duty to Plaintiffs or assist the jury in determining the allocation of the $17,561,300.

14

addresses in South Carolina.  [*Id.*][7]

However, examination of these disclosures show Plaintiffs have identified 30 people and corporate entities "likely to have discoverable information," not necessarily potential witnesses.  [Doc. 51-4 at 2–12.]  Notwithstanding, assuming these are potential witnesses and where "courts typically afford greater weight to convenience of non-party witnesses than party witnesses," *Brown v. Sullivan*, No. 6:14-CV-04376-GRA, 2015 WL 12815281, at *3 (D.S.C. Mar. 3, 2015) (internal quotation marks omitted), the Court notes Plaintiffs have identified the following non-parties and their locations: two South Carolina banks, 13 South Carolina limited liability companies with 11 of those sharing the same address, a Texas limited liability company, three Delaware limited liability companies with two of those sharing the same address, a corporation listed with both a Texas and Florida address, a corporation with a South Carolina address, a North Carolina limited liability company, three individuals with South Carolina addresses, and one individual with a Wisconsin address.[8]  [Doc. 51-4 at 2–12.]

Plaintiffs make multiple arguments concerning witnesses, including that South Carolina is more convenient for the witnesses, that the cost of obtaining witness attendance favors South Carolina, and the availability of compulsory process favors

---

[7] Defendant identified three potential witnesses in their Fed. R. Civ. P. 26 disclosures, as opposed to people likely to have discoverable information: Cardinale, Elliott, and Howard. [Doc. 51-7 at 2.]

[8] Plaintiffs note Ryan Feingold, Feingold's son, "is an analyst with Broadstreet, Inc., the company of which David Feingold serves as CEO and Michael Dazzo serves as Senior Managing Director" and that, in contrast to what is identified in Plaintiffs' disclosure, "Ryan Feingold lives in Greenville, according to his biography."  [Doc. 51 at 10 (footnote omitted).]

15

South Carolina. [Doc. 51 at 8–13.][9] However, these arguments are difficult to assess in that Plaintiffs speak in general terms about the witnesses. Additionally, although party witnesses, Plaintiffs do not dispute Defendant's affidavit evidence from Elliot and Howard stating the Southern District of Florida is a more convenient forum for them [Docs. 49-10 ¶¶ 5–6; 49-11 ¶¶ 5–6], nor that the Southern District of Florida is a more convenient forum for Feingold and Dazzo.[10]

Based on the above, Plaintiffs' argument that "the overwhelming amount of identified witnesses are located in South Carolina" is not persuasive, particularly where Plaintiffs have failed to offer any specifics beyond addresses for the non-party, non-South Carolina potential witnesses. *See, e.g., Michelin N. Am. Inc. v. Vehicular Testing Servs. LLC*, No. 6:15-CV-01261-TMC-JDA, 2016 WL 4770054, at *3 (D.S.C. Aug. 22, 2016) ("'Affidavits from the concerned parties and/or witnesses [are] important in determining whether the moving party has met its burden of proof.'") (quoting *Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 414 (D.S.C. 1996)), *Report and*

---

[9] Plaintiffs' argument regarding the availability of compulsory process favoring South Carolina, and case cited in support, appears inapposite where, in the relevant case, the defendants contended, and the plaintiff did not dispute, "that they would be prejudiced if they were required to present all of their non-party witnesses's testimony by deposition," *Liam Motors, LLC v. M & A Auto Sales*, No. CIV.A. 4:13-1810-MGL, 2013 WL 5888581, at *4 (D.S.C. Oct. 31, 2013), an issue not argued in the present case. [*See* Doc. 51 at 13.] Additionally, Plaintiffs have failed to identify any specific witness that only one court would be able to compel exclusively of the other.

[10] Plaintiffs argue "Blackstream did not identify Feingold and Dazzo as its witnesses—which it now belatedly attempts to do via its Motion" [Doc. 51 at 11 (footnote omitted)], but do not dispute that Feingold and Dazzo are in Florida and are potential witnesses. The Court accepts, for purposes of the resolution of Defendant's motion to transfer, Plaintiffs' argument that Feingold and Dazzo are not true non-party witnesses because they are closely related to the party. [*Id.* at 10 n.26.]

16

*Recommendation adopted by* 2016 WL 4761616 (D.S.C. Sept. 13, 2016); *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 870 (E.D. Va. 2013) ("The party asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.'" (internal quotation marks omitted)).[11]

## **CONCLUSION**

Based on the above, Defendants' motion to transfer [Doc. 49] is granted. This case, including all remaining pending motions, is transferred to the Southern District of Florida.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>
United States District Judge

Greenville, South Carolina
March 26, 2024

---

[11] The Court rejects Plaintiffs' argument that Defendant's delay of 14 months before moving to transfer this case weighs against transfer. [Doc. 51 at 17.] Discovery is not set to close in this matter until October 18, 2024 [Doc. 37]. *See e.g., Herring v. LaPolla Indus.*, No. 2:12-CV-2705-RMG, 2013 WL 12148849, at *5 (D.S.C. Oct. 7, 2013) (holding that judicial economy weighed against transferring partly because the "case ha[d] been pending for over a year [and the movant] waited until less than a week before discovery was set to expire . . . to move for a transfer"). The Court likewise rejects Plaintiffs' argument that Defendant's "procedural fencing weighs against transfer," where Plaintiffs' focus is on Defendant's failure to identify alleged "indispensable persons" to this case and other discovery disputes. [Doc. 51 at 19.] At this juncture, the Court has limited insight into these issues, and these issues do not impact its analysis of Defendant's motion to transfer.